K uiKPATRiOK, O. J.
This cause was tried at the Morris circuit, in September, 1822, when the jury rendered a verdict for the plaintiff for the sum of $1,750, subject to the opinion of this court upon a case stated by the counsel. The material facts, &c., (as before stated).
*“That John. Flock and Else, his wife, entered into an agreement to live separately; that the husband agreed to pay into the hands of the defendants, as trustees, the sum of $l,9u0, for the sole, separate and exclusive use of the wife, towards her support and maintenance, and to be subject to her sole order and disposition ; that the wife agreed to accept of this sum in full satisfaction of her support and maintenance, and all alimony during the coverture, and that the said trustees, upon receipt of the money, should indemnify the husband against the contracts, support and maintenance of the wife.
*176 “ That this agreement was reduced to writing, and signed and sealed by Flock and his wife, but not by the trustees ; but that the money was paid, notwithstanding, into-the hands of the trustees, for the purposes expressed in the said writing; that, in pursuance of this agreement, the said husband and wife did live separately during the lifetime of the wife; that the said trustees, during that time, did support her with the interest of the said money thus placed in their hands ; that she made a testamentary disposition of the principal sum, and died; and that the plaintiff is her administrator with this testamentary paper annexed.”
Upon this article of agreement, stated at large in the case, it is to be observed, that baron and femme cannot covenant with each other directly, and without the intervention of trustees; it is contrary to the legal notion of their unity of-person and interest; it is contrary to the whole policy of the law. The trustees named in this article never signed or sealed it, nor in any way became parties to-it. It is, therefore, at most, even upon the face of it, but a simple covenant between baron and femme; nay it is not even that, for when there is a covenant purporting to be tripartite, as this does, the execution of it by two of the-parties only leaves it a mere matter inchoate, it is incomplete ; in that state, it binds nobody. This article, therefore, as a covenant, is wholly inoperative and void.
But though'this be so, it is not fatal to the action. It is-perfectly lawful, upon the strictest principles of the common law, for baron and femme to live separately by mutual consent. Their doing so is but the voluntary relinquishment-of their conjugal rights, in which none can have any interest but themselves, and which society itself has no power to-compel them either to retain or to exercise.
*It is lawful, too, nay, indeed, it is more than lawful, it is the duty of the baron, during such voluntary separation, to make provision for the' support and maintenance of the femme, and if he should refuse so to do, he- *177 would Toe liable, in the law, to all lier contracts for things necessary to maintain her in a style suitable to his station and condition in life. He may go still farther, and in most cases he ought to go still farther, and, in consideration of her relinquishment of her conjugal rights, he may place money or lands, or both, in the hands of trustees, for her separate use, and may authorize her to enjoy the same, not only during her life, but also, by will, to dispose of them after her death. And such disposition will be available in the law, in nature of a testament; and, unless where lands are to pass, all these voluntary separations, agreements and provisions may be made by parol, or by writing without seal, as well as by deed, and will have precisely the same effect in either way.
What arc the capacities and incapacities, the rights and liabilities of the femme in this state of separation, as it respects the public, and as it respects others ; and whether this mutual consent and this provision may, at any time be withdrawn or refused by the one, without the assent and agreement of the other; and what the consequences of such withdrawing and refusing would he, it is not necessary, in this case, to inquire. It is well known that on some of these points there have been different sentiments and different decisions, by different men, at different times. No such question, however, is raised, or can be raised in this case, because both parties have fulfilled the agreement according to the letter.
Now that the article, or instrument of writing set forth in this case does not operate a covenant, is of no moment in this controversy. The action is not founded upon it, the defendants are not parties to it, nor called to answer upon it, as such. It is, however, a writing containing an agreement between baron and femme to live separately; and it is admitted, in the case, that upon this-agreement (whether binding as a covenant or not) they did separate, and live separately, until the death of the femme. It is admitted, *178 also, that, upon the same agreement, the baron did pay to the defendants, as trustees, the sum of $1,875, for and upon the trust therein expressed; that the said defendants received it upon that trust; paid to the femme the interest thereof, *annually, during her life, and that the principal still remains in their hands. Now whether the writing be binding, as a covenant, between the baron and femme, or not binding, cannot at all alter their condition. No position can possibly be more clear than that they are liable to pay over the money to somebody; the only question is, to whom? The plaintiff claims to have lawful right under the will of the femme, and has brought his action accordingly.
Upon the principles of the common law a femme covert can make no will at all, strictly speaking. But, by the permission of the baron, she may make a disposition in the nature of a will: This disposition, in order to become effectual, as the law is now settled, must be proved, in England, in the spiritual court, here, before the surrogate, and letters of administration must be obtained with the disposition annexed. The proof of such disposition, however, before the surrogate, is not equipollent in its effects with the proof of a will in ordinary cases. 'It proves that the femme executed the instrument exhibited, but whether she had power to make such a disposition, and thereby to deprive the baron of any benefit, which, by her death, might devolve upon him, may still be a question; and this question the courts of common -law have reserved to themselves.
Whether the femme, therefore, in this case, had the power of making a disposition in the nature of a testament, and especially a disposition of this money, to take effect after .her death, is the real question in this case, and is properly before this court.
For 'the solution of this question, we must look into the nature and extent of the trust upon which the money was deposited in the hands of the trustees; — and, it being *179 expressly admitted iu the case, that that trust is contained in the written article, we must look into that article, and see what it says upon that subject.
If it should be objected to this mode of investigation, that this article, being void as a covenant between the baron and femme, and the trustees being no party to it, it must be a perfect nullity ; and that no reference can lawfully be made to it, as an authentic document, for any purpose whatsoever; in answer, let us suppose, that the article never had been signed or sealed by any body, and yet that it had been expressly admitted upon the trial, that the separation had taken place, and that the money had *been paid to the trustees upon the terms, principles and agreements contained in it; and then let us ask, whether it would not be lawful to look into it to see what those terms, principles and agreements were ? It is thought the answer would certainly be in die affirmative. And yet the article in the supposed case, would be a mere nullity, as well as iu the other. Let us examine it, therefore.
It says, that “ the baron shall pay to the trustees, for the sole, separate and exclusive use of the femme,’’ the sum of §1900, towards her support and maintenance, “and to be subject to her sole order and dispositionwhich sum of §1900, so made payable to her order in manner aforesaid, the said femme agrees to accept and take in full satisfaction for her support and maintenance, and all alimony whatsoever during her coverture.
Now the question is, do these words carry to the femme a power to make a testamentary disposition of this money? It must be admitted, that they do not do so in express terms. Do they then do so in the reason and nature of things ? The money is to be paid to the trustees, for her sole, separate and exclusive use: it is to be paid in consideration of her relinquishment of her conjugal rights, generally the most precious, and by far the most important of all the rights that woman can possess; it is to be paid as a sum in *180 gross, not in annual, monthly or weekly payments, nor as a principal to raise an annual interest for her annual support; it is to be subject, in the hands of the trustees, to her sole order and disposition.
It would be difficult to find words to create an estate, in money, for the separate use of the femme, of moi*e extensive and unlimited import. But the question stil recurs, do they authorize her to make a testamentary disposition of it ?
In the case of Hearle v. Greenbank, (1 Vezey 298) Doct. Worth, among other things, had given to trustees his personal estate, “ in trust, for the sole and separate use of his daughter, Mary Winsmore, and to be at her disposal, and not subject to the debts or contracts of her husband.” Mary, the daughter, during the lifetime of her husband, made a testamentaiy disposition of it; and the lord chancellor, Plardwicke, says — “ As to the personal estate of the father, it is given to her separate use, in which case it -is a rule of this court, that a femme covert may dispose of it by will.”
*In the case of Grigsby v. Cox, (1 Vezey 517) the estate was in the hands of trustees “ for the sole and separate use of the femme;’’ and the same lord chancellor says —“The rule of the court is, that where any thing is settled to the wife’s separate use, she is considered as a femme sole, and may appoint in what manner she pleases.”
In the case of Peacock v. Monk, (2 Vezey 190) Lord Hardwicke says — “.As to personal estate, undoubtedly when there is an agreement between husband and wife before marriage, that the wife shall have it to her separate use, she may dispose of it by an act in her lifetime, or by will."
In the case of Fettiplace v. Georges, (3 Browns Ch. 8) the baron, after marriage, had placed £200 in the hands of a trustee “ for the sole and separate benefit of the femme," with a clause iu the trust, “ that the trustee should pay the same for such uses and purposes as she from time to time,, by writing under her hand, should direct and appoint;” and Thurlow, lord chancellor, says — “ All the cases shew that' *181 personal property, when it can enjoyed separately, mast be so with all its incidents, and the jus despondendi is one of them.”
It seems, therefore, I think, to be settled beyond controversy, that the placing of money or personal property in the hands of trustees, for the sole and separate use of a femme covert, whether it be done by the harón or by a stranger, and whether before or after marriage, necessarily, and without express words to that effect., carries with it the power of a testamentary disposition. And, upon this view of the case, I think there must be judgment for the plaintiff.
Ford, J.
An indenture, purporting to be made tripartite, by John Flock, of the first part, Else Flock, his wife, of the second part, and Leonard and Nicholas Neighbour, trustees, of the third part, was executed by the two former parties only. By this instrument, the husband and wife agreed to live separate; and the husband covenanted, that his wife might keep the goods she then had in possession, and such as she might thereafter acquire, to her own separate use, and dispose of them as n femme sole; he also covenanted to pay to the trustees $1,900, for her separate use, for her maintenance, and that it should be subject to her disposition. It also purported, that the trustees were to indemnify *the husband against debts of the wife’s contracting; but, for some reason or other, the trustees never executed the instrument. Nevertheless John Flock paid the money to them upon the trusts expressed in the indenture, and he and his wife lived separate till her death, a period of something less than ten years, during which time the trustees paid her the interest of the money, and she lived upon it without bringing any other charge on her husband. By her will, she bequeathed the money in question to her friends, and named an executor, who however renounced the office, and administration was committed to the plaintiff, .after probate, with the will annexed. The husband having *182 claimed this money on the death of his wife, and warned the trustees not to pay it over, the administrator seeks to recover it from them in an action of debt, and declares that they were indebted to Else Flock, in her lifetime, for so much money had and received by them to her use.
The questions'presented by this case are — First. If husband and wife contract to live in a state of separation, whether they are so bound by law to fulfil the contract that a court of equityjgwould decree specific performance, or a court of law award damages for the breach of it ? There is no doubt but husbands and wives will live separate when they are so inclined, and that many of them choose so to live, but the question is, can a contract bind them to continue so f Now the principles of the common law do plainly import, that marriage is not dissolvable by the argeement of parties, and that, as husband and wife constitute only one person in law, they are unable to contract together; because in every contract there must beat least two parties, and a mutual remedy, by action, .for breach of agreement. It is admitted that the case of Corbet & Polnitz, (1 Term Rep. 5) presents an exception to these general rules, by establishing the validity of a contract of separation, and, by consequence, the power of a femme covert to make contracts-for herself, and to sue and be sued upon them as & femme sole. But this case, after being often cited and referred to with pointed disapprobation, was at last put down by the concurrence of the twelve judges, for reasons assigned in the case of Marshall v. Rutton, (8 Term Rep. 545) with which I am entirely satisfied, but need not here repeat. The pretended exception being entirely overthrown, the general principle remains unshaken. Parties will live separate as long as they please, *but no contract can bind them to continue so; and so much of this indenture as goes to impose that obligation on them is repugnant to'the contract of marriage and void. They may break through the contract ‘of separation, and come together with impunity whenever they please.
*183 The second feature in the indenture is, that the money paid to the trustees was given to her separate use, and to be expressly at her disposal. Surely there is nothing contrary to law or the indissolubility of marriage in these provisions, for every husband is bound to provide for his wife’s maintenance, at homo or elsewhere, and if he do neither it is clearly settled, that slie may charge him with debts for necessaries. Every man may dispose of his property as he pleases, and it is the pleasure of so many husbands to settle property on trustees, in trust for the separate use of their wives, that the precedents of it, beside being immemorial are almost infinite, and need no other consideration than love and affection to make the deed valid against all but creditors. Eo principio of law will restrain a voluntary husband from being liberal and munificent to his wife; not that ho can make a donation directly to her, because that would suppose them to be two persons. It is made to third persons, in trust, and it is one great branch of jurisdiction in the court of equity to enforce these trusts, and carry them into execution. John Elock, having mado a voluntary donation of this money to trustees, and given up all right to it by his deliberate and solemn act and deed, can have no color of claim to it in law or equity. This solemn conveyance vests it in the trustees at law.
Third. And hence, arises the most serious difficulty in the case. It is said, that the trustees have the whole right in this money at law, and the administrator only an equitable right in virtue of a trust, the cognizance of which belongs exclusively to the court of equity, and cannot be managed or taken notice of in a court of law. But I think the objection is taken in too much latitude, as there are many simple cases of trust whereof a court of law takes notice, and grants redress for the breach of them. There are cases of money given upon trust, free from all complication of parties, rights, and uses, where a simple award of money satisfies all the equity and law of the case. Thus if money be given to A *184 in' trust to pay it to a third person, that third person may recover it from A by an action at law, on adducing evidence of the fact. So in the case of Bottomly v. Brook, in *1 Term Rep. 621, Brook pleaded, that the bond he made to Bottomly was in trust for one Elizabeth Chandler, who owed him more than the amount; to this there was a demurrer confessing the truth of the plea, which demurrer was withdrawn by advice of the court. I know not the extent to which courts of law might be excluded of their jurisdiction in cases for money had and received, if every thing falling under the definition of a trust were prohibited. In the case of Moses & Macfarlane, (2 Bur. 1005) the court said, that indebitatus assumpsit for money had and received was in the nature of a bill in equity, and that it lay wherever the defendant was under ties of natural justice and equity to pay the money. Now it is.very clear that these trustees cannot be allowed to keep this money for themselves, and equally clear, that John Flock’s claim is in defiance of his own act and deed. As long as the trust remained executory, the trustees had an equitable right to retain the money, as well to keep it out of the hands of the husband, as to see it so discreetly laid out in maintenance as to secure him against debts for necessaries. But by her death, their office becomes defunct, and it remains now a simple sum of money, disentangled from every trust but the final one of paying it over. It is their manifest duty to do so, and, if a duty, a debt. It is money they received to the use of Else Flock, in her lifetime, and held to her use at her death. I see no -necessity for driving these parties into a court of equity while the same, justice can be done between them at law in an action for money had and received, without the prostration of any principle or straining of jurisdiction.
Fourth. If a femme covert make a will in pursuance of a power from her husband, it is strictly not a will, but an appointment for the disposition of the property, and it is to be annexed, after probate, to the letters of administration, *185 as the administrator’s rule and guide. If the husband chose to contest her power to make a will, he should have applied to this court for a prohibition, (1 Bin. 431) but he could not have obtained it in the face of his own deed, and that obstacle is probably the reason why the application was not made. On the whole matter, there ought to be judgment for the plaintiff, according to the terms of the agreement.
Bossell, J., concurred.
Judgment for the plaintiff.